IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 12 2002 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x Civil Action No:
JOSE ANIBAL MARTINEZ,

               Plaintiff,

      v.  (S.I.)

THE COUNTY OF NASSAU, POLICE COMMISSIONER
WILLIAM J. WILLETT, DETECTIVE/LIEUTENANT
FRANK GUIDICE, DETECTIVE/SERGEANT DANIEL SEVERIN,
DETECTIVES JOHN M. HOLLAND, EDWIN TRUJILLO,
OFFICER GEORGE HOLLA, SERGEANT GATCHULL WONG,
and JOHN DOES 1-5,

               Defendant(s).
------------------------------------------------------------------x

**CV 02 4985**

**COMPLAINT**

**SEYBERT, J.**
**WALL, M.J.**

      Plaintiff, by and through his attorneys, GRANDINETTE & SERIO, LLP., hereby states for his Complaint against the defendants, THE COUNTY OF NASSAU, POLICE COMMISSIONER WILLIAM J. WILLETT, DETECTIVE/LIEUTENANT FRANK GUIDICE, DETECTIVE/SERGEANT DANIEL SEVERIN, DETECTIVES JOHN M. HOLLAND, EDWIN TRUJILLO, OFFICER GEORGE HOLLA, SERGEANT GATCHULL WONG, and JOHN DOES 1-5, the following:

### INTRODUCTORY STATEMENTS

      This is an action for damages sustained by a resident of the United States against the above named defendants for various State and Federal constitutional and civil rights violations including but not limited to false arrest, false imprisonment, malicious prosecution, battery committed in performance of public duty or authority, inadequate training and supervision, Brady violations, conspiracy, and failure to provide equal protection under the law based upon race, and for maintaining policies and

customs intentionally, through gross negligence or deliberate indifference resulting in the depravation of the constitutional rights of its citizens.

## JURISDICTION

This Court has jurisdiction of this case under 42 U.S.C. §1981 and §1983, 28 U.S.C. §1331, 28 U.S.C. §1343(3)(4) and the first, fourth, fifth, sixth, eighth and fourteenth amendments to the Constitution of the United States.

## PARTIES

1. Plaintiff, JOSE ANIBAL MARTINEZ (hereinafter **MARTINEZ**), was a legal resident of Freeport, County of Nassau, State of New York, and at all times relevant to the allegations of this complaint did so reside.

2. At all times relevant hereto, defendant, DETECTIVE EDWIN TRUJILLO (hereinafter **TRUJILLO**), was a detective employed by the Nassau County Police Department to perform duties therein including investigating homicides originating in the County of Nassau. **TRUJILLO** was acting in such capacity as an agent, servant and employee of the defendant, County of Nassau. He is sued in his official capacity.

3. At all times relevant hereto, defendant, DETECTIVE JOHN M. HOLLAND (hereinafter **HOLLAND**), was a detective employed by the Nassau County Police Department to perform duties therein including investigating homicides originating in the County of Nassau. **HOLLAND** was acting in such capacity as an agent, servant and employee of the defendant, County of Nassau. He is sued in his official capacity.

4. At all times relevant hereto, defendant, DETECTIVE/LIEUTENANT FRANK GUIDICE (hereinafter **GUIDICE**), was the commanding officer of the Nassau County Homicide Bureau. That as such he was responsible for the training, supervision and policy implementation of his department and its personnel. **GUIDICE** was acting in such capacity as an agent, servant and employee of the defendant, COUNTY OF NASSAU. He is sued in his official capacity. .

5. At all times relevant hereto, defendant, DETECTIVE/SERGEANT DANIEL SEVERIN (hereinafter **SEVERIN**), was a detective employed by the Nassau County Police Department to perform duties therein including investigating homicides originating in the County of Nassau as well as supervisory duties within the Nassau County Homicide Bureau. **SEVERIN** was acting in such capacity as an agent, servant and employee of the defendant, County of Nassau. He is sued in his official capacity.

6. At all times relevant hereto, defendant, OFFICER GEORGE HOLLA (hereinafter **HOLLA**), was employed by the Nassau County Police Department. **HOLLA** was acting in such capacity as an agent, servant and employee of the defendant, County of Nassau. He is sued in his official capacity.

7. At all times relevant hereto, defendant, SERGEANT GATCHULL WONG (hereinafter **WONG**), was a sergeant employed by the Nassau County Police Department. **WONG** was acting in such capacity as an agent, servant and employee of the defendant, County of Nassau. He is sued in his official capacity.

8. The defendant, COUNTY OF NASSAU (hereinafter **"COUNTY"**), is a municipal corporation within the State of New York and at all relevant times, it employed defendants, **GUIDICE, SEVERIN, HOLLAND, TRUJILLO, HOLLA, WONG, and JOHN DOES 1-5 and NASSAU POLICE COMMISSIONER WILLIAM J. WILLETT.**

9. At all times relevant hereto, defendant, WILLIAM J. WILLET (hereinafter **WILLETT**), was the duly appointed Commissioner of the Nassau County Police Department. As such, he was the commanding officer of defendants GUIDICE, SEVERIN, HOLLAND, TRUJILLO, HOLLA, WONG, and JOHN DOES 1-5 and was responsible for their training, supervision, and conduct. He was also responsible for instituting and enforcing official policies and regulations of the Nassau County Police Department and for ensuring that Nassau County police personnel obey the laws of the State of New York and of the United States. At all relevant times, he was acting in such capacity as the agent, servant and employee of the defendant, COUNTY OF NASSAU. He is sued in his official capacity.

10. At all times relevant hereto, defendant, JOHN DOES 1-5 , were officers and/or detectives employed by the Nassau County Police Department to perform duties therein.

11. At all times relevant hereto all named defendants were acting under color of law and pursuant to their authority as police personnel.

## FACTUAL ALLEGATIONS

1. On the evening of July 30, into the early morning hours of July 31, 2001, after midnight, the plaintiff, **MARTINEZ**, was socializing with his friend, Jose Alberto Cruz, at Mr. Cruz's residence located at 25 Thoma Place, Roosevelt, New York.

2. On July 31, 2001, at approximately 12:40 a.m. an unknown male black approached the fence in the front yard of Mr. Cruz's residence and discharged a revolver striking and killing Mr. Cruz.

3. **MARTINEZ** fled the scene returning to his home in Freeport, New York.

4. On August 1, 2001, **MARTINEZ** was arrested in Freeport by the Nassau County Police Department.

5. Thereafter, **MARTINEZ** was brought to the Nassau County Homicide Bureau where he was interrogated by **TRUJILLO**.

6. The defendants, having isolated **MARTINEZ** from his family, engaged in a course of conduct depriving him of his constitutional protections to be free from illegal searches and seizures, right to counsel, right to remain silent, unlawful detention, due process and battery committed in the performance of public duty or authority.

7. After **MARTINEZ** was taken into custody he was threatened, lied too, tricked, deceived, abused and battered, the goal of the defendants being to induce **MARTINEZ** into signing a false confession.

8. **MARTINEZ'S** denials of any involvement with the death of his friend were ignored. **MARTINEZ'S** account of a male black shooter were rebuffed by

defendants who accused **MARTINEZ** of being a liar in a abusive, threatening, intimidating and physical manner throughout the course of his interrogation.

9. Despite **MARTINEZ'S** claims of innocense, **TRUJILLO** prepared a confession.

10. **MARTINEZ'S** was told by **TRUJILLO** that he had to sign the "confession" saying he accidentally shot his friend; or, **MARTINEZ** would be sent to jail for the rest of his life.

11. **MARTINEZ** was never appraised of his fifth amendment right to remain silent or his sixth amendment right to counsel prior to signing the "confession".

12. **MARTINEZ** after tactics involving coercion, deception, physical and verbal abuse signed the "confession" which states in part:

"The night of Monday the 30th of July, 2001 into the morning of Tuesday the 31st of July, 2001, I was at the home of my friend Alberto Cruz who lived at 25 Thoma Place, Roosevelt, N.Y. We had been drinking Heineken Beer. I had arrived at about 7:00 p.m. and had only drank 4 beers when that happened. Alberto had shown me a firearm that he had gotten to protect himself because he had been robbed before and someone had fired shots at the house. The firearm is a revolver, color black, .38 caliber, short. Alberto was standing next to the porch and I was sitting on the

porch. When I was looking at it he gave it to me so I could look at it good. I took the revolver in my hands and I had my index finger on the trigger. I got down from the porch and then tripped with the revolver in my hand. My index finger squeezed the trigger and I fired one shot that hit Alberto on the right side. Alberto fell to the dirt and didn't move. I only thought of throwing away the gun and I ran to the back yard and threw the gun in the tall plants by the garage."

13. Based upon this "confession" two felony complaints were prepared, dated August 2, 2001, charging **MARTINEZ** with manslaughter, second degree, as a class C Felony (P.L. §125.15(1)) and criminal possession of a weapon, third degree, as a class D Felony (P.L. §265.02(4)).

14. **MARTINEZ** was arraigned on August 2, 2001, and could not post bail.

15. After **MARTINEZ'S** arrest, based upon information provided by defendants which they knew or should have known to be false, **MR. MARTINEZ'S** name and photograph was disseminated on television and in the press as the individual criminally responsible for the death of Alberto Cruz.

16. **MARTINEZ** was represented by legal aide, and then subsequently, his family retained Robert G. Peck, Esq.

17. Between August 1, 2001, and January 14, 2002, **MARTINEZ** was prosecuted for and remained in jail for allegedly killing his friend Alberto Cruz based upon the felony complaints and alleged "confessions".

18. In or about October of 2001, defendants received "Brady" information suggesting **MARTINEZ** was innocent.

19. That the defendants failed to come forward with that "Brady material" until after the arrest of JARREU CARTER on January 8, 2002.

20. JARREU CARTER was arrested for the murder of Alberto Cruz which took place back on Tuesday, July 31, 2001 at 25 Thoma Place in Roosevelt. The same murder for which **MARTINEZ** allegedly voluntarily "confessed" to committing.

21. JARREU CARTER was charged with second degree murder on January 8, 2002 for the death of Alberto Cruz. According to the defendants, Carter, was a member of the "Bloods" gang and killed Alberto Cruz as a gang retaliation, mistaking Cruz for a member of the "MS-13" gang.

22. On January 9, 2002, **MARTINEZ** was released from prison after his bail status was altered.

23. On January 14, 2002 the felony charges against **MARTINEZ** were reduced to misdemeanors then dismissed on motion of assistant District Attorney Frank Schroeder pursuant to criminal procedure law §170.30 in the interest of justice. **MARTINEZ** was in custody on these charges for a period of 5 months and 9 days.

24. The Nassau County police department, developed and maintained policies and customs exhibiting deliberate indifference or with the intentional objective to deprive homicide suspects of their constitutional protections against self incrimination and their right to counsel.

25. It was and still is the policy and/or custom of the homicide squad to avoid applying for arrest warrants, to isolate criminal suspects prior to arresting them thus eliminating the possibility of a third party retaining counsel on the suspects behalf. Thereafter, they are taken to the homicide bureau and interrogated without the advisement of their constitutional protections. If they request counsel or invoke the right to remain silent, those requests are ignored. The homicide squad through deliberate indifference and/or their intentional acts prevent, mislead and lie to suspects and their family members to deprive them of their constitutional rights against illegal searches and seizure, right to remain silent and their right to counsel.

26. It was and is the policy and/or custom for supervisors to participate in said constitutional violations and/or supervise and discipline officers inadequately, including the named and unnamed officers, thereby failing to discourage constitutional violations on the part of its officers.

27. Police officers of the County of Nassau have for years engaged in a pattern and practice of actively and passively covering up the misconduct of fellow officers by failing to come forward or failing to accurately give evidence as to misconduct which they are aware, thereby establishing and perpetuating a "code of silence" which in turn has perpetuated the homicide bureau's denial of constitutional protections to homicide suspects.

28. That through a series of law suits and by other means, the Nassau County Police Department, the Homicide Bureau and its supervisors have been placed on notice that the Homicide Bureau has secured written

"confessions" for the crime of murder from innocent parties.

29. That these innocent parties have alleged a deprivation of constitutional protections and the violation of local, state, and federal law during the interrogation process and that no remedial steps have been taken to correct the problem.

30. The supervising and policy making personnel of the defendants have simply refused to take steps to institute policies to ensure compliance with local state and federal law.

31. That despite the advancements in today's technology the Nassau County Police Department Homicide Bureau has refused to tape record or video tape the advisement of the defendants rights and/or the interrogation and subsequent "confessions".

32. That the supervising personnel of the Homicide Bureau and their supervisors are aware of or should be aware of these constitutional violations and continue them as a means to obtain evidence despite the obvious violations of local, state and federal laws.

33. The defendants, individually and together, have actively and passively covered up the misconduct of their fellow officers.

34. The allegations set forth in paragraphs 1 through 33 are incorporated herein by reference.

35. The herein above described actions and omissions, engaged in under color of state authority by the defendants, including defendant County, sued as a person, responsible because of their authorization, condonation and ratification thereof for the acts of their agents, deprived the plaintiff of

rights secured to him by the Constitution of the United States under 42 U.S.C. §1981 and §1983, including, but not limited to, his first amendment right to freedom of expression, his fourth amendment right to be free from unlawful seizure of his person, his fifth amendment right against self incrimination, his sixth amendment right to counsel, his fourteenth amendment rights to due process of law, including the right to be free from unjustified and excessive force utilized by police, his eighth amendment right to be free from cruel and inhuman punishment, his right to equal protection under the law; and for engaging in a pattern or practice constituting a policy aimed at the deprivation of constitutional rights against suspects in homicide cases within the County of Nassau.

### Count 1 - 42 U.S.C. §1983 - False Imprisonment

False Imprisonment by their conduct and under color of law, defendant(s) deprived **MR. MARTINEZ** of his constitutional right to be free from false imprisonment.

### Count 2 - 42 U.S.C. §1983 - False Arrest

False Arrest by their conduct and under color of law, defendant(s) deprived **MR. MARTINEZ** of his constitutional right to be free from false arrest.

### Count 3 - 42 U.S.C. §1983 - Malicious Prosecution

Malicious Prosecution by their conduct and under color of law, defendant(s) deprived **MR. MARTINEZ** of his constitutional right to be free from malicious prosecution.

### Count 4 - 42 U.S.C. §1983 - Conspiracy

Conspiracy, under color of law, the defendants conspired with each other and others, reached a mutual understanding, and acted to undertake a course of conduct to deny, injure, oppress, threaten, trick, and deceive **MR. MARTINEZ** in the free exercise and enjoyment of the rights and privileges and equal protection of the law secured to him by the Constitution, including the right to be free from unreasonable searches and seizures; right to counsel and right to remain silent;

In further of the conspiracy the defendants engaged in:

a) falsely arrested and imprisoned **MR. MARTINEZ**;

b) engaged in a course of conduct to illicit a false confession;

c) submitted false reports and statements to further the conspiracy;

d) withheld relevant evidence which exonerated **MR. MARTINEZ** of wrong doing;

e) employed the practice known as the "code of silence" to conceal their misconduct.

### Count 5 - 42 U.S.C. §1983 - County Liability

The Nassau County police department, developed and maintained policies and customs exhibiting deliberate indifference or with the intentional objective to illegally seize suspects and to deprive them of their constitutional protections against self incrimination and their right to counsel.

It was and still is the policy and/or custom of the homicide squad to avoid applying for arrest warrants, to isolate criminal suspects prior to arresting them thus eliminating the possibility of a third party retaining counsel on the suspects behalf.

Thereafter, they are taken to the homicide bureau and interrogated without the advisement of their constitutional rights. If they request counselor, invoke the right to remain silent, those requests are ignored. The homicide squad through deliberate indifference and/or their intentional acts prevent, mislead and lie to suspects and their family members to deprive them of their constitutional rights against illegal searches and seizure, right to remain silent and their right to counsel.

It was and is the policy and/or custom for supervisors to participate in said constitutional violations and/or supervise and discipline officers inadequately, including the named and unnamed officers, thereby failing to discourage constitutional violations on the part of its officers.

Police officers of the County of Nassau have for years engaged in a pattern and practice of actively and passively covering up the misconduct of fellow officers by failing to come forward or failing to accurately give evidence as to misconduct which they are aware, thereby establishing and perpetuating a "code of silence" which in turn has perpetuated the homicide bureau's denial of constitutional protections to homicide suspects.

### Count 6 - 42 U.S.C. §1981- Equal Protection

The defendant(s) herein engaged in a course of conduct against a racial minority (Jose Martinez), with the intent to deprive him of the full and equal benefit of the constitution and laws of the United States based upon race.

### Count 7 - 42 U.S.C. §1981 - County Liability/Equal Protection

The Nassau County Police Department developed and maintained policies and customs against racial minorities in homicide cases (Shonnard Lee, Robert

Moore, Michael Prince, Blair Garner and Jose Anibal Martinez) with the intent to deprive minorities of the full and equal benefit of the constitution and laws of the United States.

### Count 8 - 42 U.S.C. §1981- County Liability/Inadequate Training

The Nassau County Police Department through negligence, gross negligence and/or deliberate indifference has inadequately trained the members of the Nassau County Homicide Bureau resulting in the deprivation of constitutional privileges.

### Count 9 - 42 U.S.C. §1981- County Liability/Brady Violations

The Nassau County Police Department failed to adopt an adequate policy or to provide adequate training regarding the handling of exculpatory evidence.

## PENDENT CAUSES OF ACTION

36. The allegation set forth in paragraph 1 through 35 are incorporated herein by reference.

37. Heretofore and on or about the 12th day of February, 2002, the plaintiff caused a written verified Notice of Claim to be filed with and served upon the proper officers, agents and employees of the defendant County and the New York State Attorney Generals Office pursuant to the statutes in such cases made and provided. A copy of the Notice is annexed hereto as Exhibit A and made a part hereof.

38. That more than thirty days have elapsed since the service of such Notice of Claim, and adjustment or payment thereof has been neglected or refused.

39. The acts and conduct hereinbefore alleged constitute false arrest and imprisonment, battery committed in performance of public duty or authority, malicious prosecution, the deprivation of State law and constitutional rights based upon several grounds. This Court has pendent jurisdiction to hear and adjudicate these claims.

### Count 10

#### BATTERY COMMITTED IN PERFORMANCE OF PUBLIC DUTY OR AUTHORITY

**TRUJILLO** committed acts of battery against **MARTINEZ**. The County is responsible for the battery of **MARTINEZ** by **TRUJILLO** because it occurred while they were acting in the scope of their employment.

### Count 11

#### PENDANT CLAIM OF FALSE ARREST

**MARTINEZ** was wrongfully, unlawfully and unjustifiably charged and arrested without a warrant and without probable cause.

The County is responsible for the false arrest because it occurred while the defendant(s) and other employees were acting in the scope of their employment.

### Count 12

#### PENDENT CLAIM OF FALSE IMPRISONMENT

**MARTINEZ** was wrongfully, unlawfully and unjustifiably detained and deprived of his liberty against his will and imprisoned by defendant(s) without probable cause and without a warrant.

The County is responsible for the false imprisonment of **MARTINEZ** because at the time the defendant(s) and other employees were acting within the scope of their employment.

### Count 13

### PENDENT CLAIM OF MALICIOUS PROSECUTION

**MARTINEZ** was wrongfully, unlawfully, unjustifiably and maliciously prosecuted against his will between August 1, 2001 and January 14, 2002 during the majority of which he was incarcerated at the Nassau County Correctional Center (August 1, 2001 through January 9, 2002).

The County is responsible for the malicious prosecution of **MARTINEZ** because at the time the defendant(s) and other employees were acting within the scope of their employment.

### Count 14 - False Arrest

PENDENT CLAIM FOR THE VIOLATION OF ARTICLE I,
§ 12 OF THE NEW YORK CONSTITUTION AND NEW
YORK CIVIL RIGHTS LAW §8

**JOSE MARTINEZ** was wrongfully, unlawfully and unjustifiably detained and deprived of his liberty against his will and imprisoned by defendant(s) without probable cause and without a warrant.

The County is responsible for the false imprisonment of **JOSE MARTINEZ** because at the time the defendant(s) and other employees were acting within the scope of their employment.

<u>Count 15 - Equal Protection</u>

PENDENT CLAIM FOR THE RACIALLY MOTIVATED
VIOLATION OF ARTICLE I, § 11 OF THE
NEW YORK STATE CONSTITUTION AND
<u>NEW YORK CIVIL RIGHTS LAW §40-C</u>

The defendant(s) herein engaged in a course of conduct against a racial minority (**JOSE MARTINEZ**), with the intent to deprive him of the full and equal benefit of the constitution and laws of the United States based upon race.

**WHEREFORE**, Plaintiffs demand the following relief jointly and severally, against all the defendants:

A. Compensatory damages in the amount of TWENTY MILLION ($20,000,000.00) DOLLARS.

B. Punitive damages in the amount of FORTY MILLION ($40,000,000.00) DOLLARS.

C. Attorneys' fees pursuant to 42 U.S.C. §1988.

D. Injunctive relief prohibiting the aforementioned conduct.

E. Reasonable attorney's fees.

F. Such other and further relief as this Court may deem just and proper.

G. Plaintiff demands Trial by Jury.

_____
ANTHONY M. GRANDINETTE (5913)
GRANDINETTE & SERIO, LLP
114 Old Country Road
Mineola, New York 11501
(516) 248-5317